# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ALABAMA
# MOBILE DIVISION

| | |
|---|---|
| SONYA GLADNEY PLEASANTS, Individually and For Others Similarly Situated<br><br>v.<br><br>PILOT CATASTROPHE SERVICES, INC. | Case No. 1:23-cv-132<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Pursuant to 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Sonya Gladney Pleasants (Pleasants) brings this collective action lawsuit to recover unpaid overtime wages and other damages from Pilot Catastrophe Services, Inc. (Pilot) under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq*.

2. Pleasants worked for Pilot as an Insurance Claim Adjuster.

3. Pleasants and the Day Rate Adjusters (as defined below) regularly worked for Pilot in excess of 40 hours each week.

4. But Pilot never paid Pleasants and the Day Rate Adjusters overtime.

5. Instead of paying overtime as required by the FLSA, Pilot misclassified Pleasants and the Day Rate Adjusters as exempt from overtime and paid them a flat amount for each day worked (a "day rate") without overtime compensation.

6. Pilot never paid Pleasants or the Day Rate Adjusters on a "salary basis."

7. This collective action seeks to recover the unpaid overtime wages and other damages Pilot owes to Pleasants and the Day Rate Adjusters.

### JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. This Court has general personal jurisdiction over Pilot because Pilot is a domestic corporation headquartered in Mobile, Alabama.

10. Venue is proper in this Court because Pilot maintains its headquarters in Mobile, Alabama. 28 U.S.C. § 1391(b)(1).

## PARTIES

11. Pleasants has worked for Pilot as an Insurance Claim Adjuster since approximately September 2018.

12. Throughout her employment, Pilot paid Pleasants a flat rate for each day worked regardless of the total hours worked in a day or week with no overtime ("day rate pay scheme").

13. Pleasants' written consent is attached as **Exhibit 1**.

14. Pleasants brings this action on behalf of herself and all other similarly situated Pilot workers who Pilot paid under its illegal day rate pay scheme.

15. Pilot paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours worked in excess of 40 hours in a workweek in violation of the FLSA.

16. The collective of similarly situated employees is defined as:

> **All current and former Pilot Insurance Claim Adjusters who were paid a day rate with no overtime at any time during the past 3 years ("Day Rate Adjusters" or "Putative Collective").**

17. The Day Rate Adjusters can be readily ascertained from Pilot's business and personnel records.

18. Pilot is an Alabama corporation that maintains its headquarters in Mobile, Alabama.

19. Pilot may be served with process by serving its registered agent: **John C. Bell, 1055 Hillcrest Road, Suite F4, Mobile, Alabama 36695**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

20. At all relevant times, Pilot was and is an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

21. At all relevant times, Pilot was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

22. At all relevant times, Pilot has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

23. At all relevant times, Pilot has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, equipment, hardhats, cell phones/devices, personal protection equipment, etc.) that have been moved in or produced for commerce.

24. In each of the past 3 years, Pilot has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

25. At all relevant times, Pleasants and the Day Rate Adjusters were engaged in commerce or in the production of goods for commerce.

26. Pilot uniformly applied its policy of paying its Insurance Claim Adjusters, including Pleasants and the Day Rate Adjusters, a day rate with no overtime compensation.

27. Pilot applied this policy regardless of any alleged individualized factors such as precise job position, job duties/responsibilities, client assignment, or geographic location.

28. By paying Pleasants and the Day Rate Adjusters a day rate with no overtime compensation, Pilot violated (and continues to violate) the FLSA's requirement to pay employees at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek.

29. As a result of Pilot's uniform day rate pay scheme, Pleasants and the Day Rate Adjusters do not receive overtime in violation of the FLSA.

30. Pilot's uniform compensation scheme of paying its Pleasants and the Day Rate Adjusters a day rate with no overtime compensation for weeks in which these workers work over 40 hours is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

## THE FACTS

31. Pilot is an insurance adjusting firm that "provides a complete suite of services to handle claims arising from catastrophic events."[1]

32. To complete its business objectives, Pilot hires Insurance Claim Adjusters (including Pleasants and the Day Rate Adjusters) to provide insurance claim adjustment services to its clients.

33. Pilot uniformly classifies these employees as exempt and pays them on a day rate basis (without overtime pay).

34. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

35. For example, Pleasants has worked for Pilot as an Insurance Claim Adjuster since approximately September 2018.

36. As an Insurance Claim Adjuster, Pleasants' primary job duties include inspecting property damage caused by catastrophic events (e.g., hurricanes); assessing the cost of said damage for insurance claim purposes in accordance with Pilot's policies, procedures, and expectations; and providing insurance carriers with damage estimates.

37. Throughout her employment, Pilot classified Pleasants as exempt and paid her on a day rate basis (without overtime).

---

[1] https://www.pilotcat.com/ (last visited April 12, 2023).

4

38. Specifically, during her employment, Pilot paid Pleasants a day rate of $450 (roughly half of which Pilot Characterizes as "per diem" payments) for each day she actually worked, regardless of the number of hours she worked that day (or that workweek) and failed to pay her overtime compensation:

**Full Day Billing Example***

|  | Amount Billed to Client | Amount to Adjuster | Portion to Adjuster |
|---|---|---|---|
| Total | $750 | $450 | 60.00% |
| Daily Rate | $750 | $219 (See paragraphs 1 and 2) | 29.20% |
| Per Diem | $0 | $231 (See paragraph 3) | 0.00% |

39. Pilot purports to pay Pleasants and the Day Rate Adjusters a base "salary" of $686 per week:

> 1. **SALARY. You will be paid a guaranteed fixed minimum salary of $686 per week ("salary")** effective as of the date you actually begin to provide services and work on files relating to This Event at the site of This Event or when you commence attending formal orientation for This Event, whichever occurs first (the "Start Date"). While you are deployed on This Event, the salary is payable weekly to you by or on behalf of Pilot. The salary is prorated for the initial and terminal week(s) for your deployment for This Event. You will receive only one salary per workweek regardless of the number of events to which

40. But Pleasants and the Day Rate Adjusters' purported "salaries" bear no "reasonable relationship … between the guaranteed amount and the amount [these employees] actually earned[,]" as required by 29 C.F.R. § 541.604(b).

41. This is because, in addition to their purported base "salaries," Pilot pays Pleasants and the Day Rate Adjusters additional pay – on a day rate basis – for each day these employees work.

42. And Pleasants and the Day Rate Adjusters regularly work 7 days a week.

43. Thus, Pleasants and the Day Rate Adjusters' purported "salaries" bear no reasonable relationship to the amount they actually earned. *See* 29 C.F.R. § 541.604(b); *see also* DOL Opinion Letter Fair Labor Standards Act (FLSA), No. FLSA2018-25, 2018 WL 5921453, at *2 (Nov. 8, 2018) (citing 29 C.F.R. § 541.604(b)); *cf. See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. ---, 143 S.Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)").

44. For example, when Pleasants works 7 days in a workweek, her purported base salary ($686) bears no reasonable relationship to her actual earnings ($3,150).

45. Pilot uniformly paid Pleasants and the Day Rate Adjusters under its illegal day rate pay scheme that deprived these employees of overtime compensation when they worked more than 40 hours in a workweek.

46. Pleasants and the Day Rate Adjusters are not paid on a "salary basis."

47. Pleasants and the Day Rate Adjusters are paid on a day rate basis (without overtime).

48. Indeed, if Pleasants and the Day Rate Adjusters did not work, they did not get paid:

49. Pleasants and the Day Rate Adjusters' day rates do not increase when they work more than 40 hours in a workweek.

50. Pleasants and the Day Rate Adjusters do not receive overtime pay when they work in excess of 40 hours.

51. This is despite Pleasants and the Day Rate Adjusters often working 12+ hours a day, for up to 7 days a week.

52. Although Pleasants and the Day Rate Adjusters typically worked 84+ hours/workweek, Pilot never paid them any overtime compensation.

53. Pleasants and the Day Rate Adjusters work in accordance with the schedule set by Pilot and/or its insurance carrier clients.

54. Pleasants' work schedule is typical of the Day Rate Adjusters.

55. Pilot knows Pleasants and the Day Rate Adjusters work 12+ hours a day, for up to 7 days a week.

56. Pilot's records reflect the fact that Pleasants and the Day Rate Adjusters regularly work far in excess of 40 hours in certain workweeks.

57. Rather than receiving time and half as required by the FLSA, Pilot pays Pleasants and the Day Rate Adjusters a day rate regardless of the number of hours they worked in a day or workweek, and even if they worked more than 40 hours in a workweek.

58. Pilot controls Pleasants and the Day Rate Adjusters' pay.

59. Likewise, Pilot (and/or its insurance carrier clients) controls all the significant or meaningful aspects of the job duties and work Pleasants and the Day Rate Adjusters perform.

60. Pilot requires Pleasants and the Day Rate Adjusters to follow Pilot's and its insurance carrier clients' policies and procedures.

61. Pleasants and the Day Rate Adjusters' work must adhere to the quality standards put in place by Pilot and/or its insurance carrier clients.

62. Pleasants and the Day Rate Adjusters are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

63. Indeed, the daily and weekly activities of Pleasants and the Day Rate Adjusters are routine and largely governed by standardized plans, procedures, and checklists created by Pilot and/or its insurance carrier clients.

64. Virtually every job function is predetermined by Pilot (and/or its insurance carrier clients), including the forms to use, the data to compile, the schedule of work, and related work duties.

65. Pilot prohibits Pleasants and the Day Rate Adjusters from varying their job duties outside of the predetermined parameters and requires Pleasants and the Day Rate Adjusters to follow Pilot's (and/or its insurance carrier clients') policies, procedures, and directives.

66. Pilot (and/or its insurance carrier clients) exercises control over the hours and locations Pleasants and the Day Rate Adjusters work, the forms they use, the reports they provide, and the rates of pay they receive.

67. All of Pilot's Day Rate Adjusters perform similar work and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

68. Pleasants and the Day Rate Adjusters do not have the power to hire, fire, or discipline any employees.

69. Pleasants and the Day Rate Adjusters do not supervise other employees.

70. Pleasants and the Day Rate Adjusters do not exercise discretion or judgment with respect to matters of significance.

71. Thus, Pleasants and the Day Rate Adjusters perform non-exempt job duties and, therefore, are entitled to overtime pay at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek.

72. Pleasants' working relationship with Pilot is similar to that of the Day Rate Adjusters.

73. All of the Day Rate Adjusters perform similar job duties, work similar hours, and are denied overtime as a result of the same illegal pay practice.

74. All of the Day Rate Adjusters work in excess of 40 hours each week and often work 84+ hours in a workweek.

75. Pilot uniformly denies Pleasants and the Day Rate Adjusters overtime for the hours they work in excess of 40 hours in a single workweek.

76. Pilot's uniform policy of paying Pleasants and the Day Rate Adjusters a day rate with no overtime compensation violates the FLSA because it deprives Pleasants and the Day Rate Adjusters of overtime pay for the hours they work in excess of 40 hours in a single workweek.

77. Pilot is aware, or should have been aware, that it was subject to the FLSA, including its overtime requirements.

78. Pilot is aware, or should have been aware, that the FLSA required it to pay Pleasants and the Day Rate Adjusters overtime at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

79. Pilot is aware, or should have been aware, that Pleasants and the Day Rate Adjusters were non-exempt from the FLSA's overtime provisions and, therefore, entitled to overtime pay.

80. Pilot is aware, or should have been aware, that Pleasants and the Day Rate Adjusters regularly worked more than 40 hours in a workweek because it expected and required these workers to do so.

81. Pilot knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA.

82. Nonetheless, Pilot did not pay Pleasants and the Day Rate Adjusters overtime at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek in violation of the FLSA.

83. Pilot knowingly, willfully, or in reckless disregard carried out this illegal day rate pay scheme that deprived Pleasants and the Day Rate Adjusters of overtime compensation in violation of the FLSA.

84. Pilot's failure to pay overtime compensation to Pleasants and the Day Rate Adjusters was neither reasonable, nor was the decision not to pay these employees overtime made in good faith.

## COLLECTIVE ACTION ALLEGATIONS

85. Pleasants realleges and incorporates all other paragraphs by reference.

86. Pleasants brings her FLSA claim as a collective action under § 216(b) of the FLSA.

87. Numerous individuals were victimized by Pilot's pattern, practice, and policy of paying its employees, including Pleasants and the Day Rate Adjusters, a day rate with no overtime, which is in willful violation of the FLSA.

88. Based on her experience and tenure with Pilot, Pleasants is aware that that the illegal practices Pilot imposed on her were likewise imposed on the Day Rate Adjusters.

89. The Day Rate Adjusters are similarly situated in all relevant respects.

90. Pilot's failure to pay Pleasants and the Day Rate Adjusters overtime wages at the rates required by the FLSA results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Day Rate Adjusters.

91. The specific job titles or precise job locations of the Day Rate Adjusters do not prevent collective treatment.

92. Pleasants has no interest contrary to, or in conflict with, the Day Rate Adjusters.

93. Like each Day Rate Adjuster, Pleasants has an interest in obtaining the unpaid overtime wages owed to them under federal law.

94. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

95. Absent this collective action, many Day Rate Adjusters likely will not obtain redress for their injuries, and Pilot will reap the unjust benefits of violating the FLSA.

96. Even if some of the Day Rate Adjusters could afford individual litigation against Pilot, it would be unduly burdensome to the judicial system.

97. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the collective and provide judicial consistency.

98. The questions of law and fact that are common to Pleasants and each Day Rate Adjuster predominate over any questions affecting solely the individual members.

99. Among the common questions of law and fact are:

   a. Whether Pilot's illegal pay practices were applied uniformly across the nation to all Day Rate Adjusters;

   b. Whether Pleasants and the Day Rate Adjusters were exempt from overtime;

   c. Whether Pilot's day rate pay scheme satisfies the salary basis test;

   d. Whether Pilot's decision to not pay Pleasants and the Day Rate Adjusters overtime was made in good faith; and

   e. Whether Pilot's violations of the FLSA were willful.

100. Pleasants' claims are typical of the claims of the Day Rate Adjusters.

101. Pleasants and the Day Rate Adjusters sustained damages arising out of Pilot's illegal and uniform employment policies and practices.

102. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

103. Therefore, the issue of damages does not preclude collective treatment.

104. Pilot is liable under the FLSA for failing to pay overtime to Pleasants and the Day Rate Adjusters.

105. Consistent with Pilot's illegal pay policy, Pleasants and the Day Rate Adjusters were not paid the proper premium overtime compensation when they worked more than 40 hours in a workweek.

106. As part of its regular business practices, Pilot intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Pleasants and the Day Rate Adjusters.

107. Pilot's illegal pay and classification policies deprived Pleasants and the Day Rate Adjusters of the premium overtime wages they are owed under federal law.

108. Pilot is aware, or should have been aware, that FLSA required it to pay Pleasants and the Day Rate Adjusters overtime at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek.

109. There are many similarly situated Day Rate Adjusters who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

110. Notice of this lawsuit should be sent to the Day Rate Adjusters pursuant to 29 U.S.C. § 216(b).

111. Those similarly situated workers (the Day Rate Adjusters) are known to Pilot, are readily identifiable, and can be located through Pilot's business and personnel records.

### CAUSE OF ACTION
### VIOLATIONS OF THE FLSA

112. Pleasants realleges and incorporates all other paragraphs by reference.

113. Pleasants brings her FLSA claims as a collective action under 29 U.S.C. § 216(b).

114. As set forth herein, Pilot violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees (Pleasants and the Day Rate Adjusters) in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without compensating such employees for their employment in excess of 40 hours per week at rates not less than 1.5 times the regular rates for which they were employed.

115. Pilot knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Pleasants and the Day Rate Adjusters overtime compensation.

116. Pilot's failure to pay overtime compensation to Pleasants and the Day Rate Adjusters was neither reasonable, nor was the decision not to pay overtime made in good faith.

117. Accordingly, Pleasants and the Day Rate Adjusters are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

### JURY DEMAND

118. Pleasants demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Pleasants individually, and on behalf of the Day Rate Adjusters, prays for the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Day Rate Adjusters allowing them to join this action by filing a written notice of consent;

    b. An Order pursuant to Section 16(b) of the FLSA finding Pilot liable for unpaid back wages due to Pleasants and the Day Rate Adjusters and for liquidated damages in an amount equal to their unpaid compensation;

    c. A Judgment against Pilot awarding Pleasants and the Day Rate Adjusters all their unpaid overtime compensation and an equal amount as liquidated damages;

    d. An Order awarding attorney's fees, costs, and expenses;

    e. Pre- and post-judgment interest at the highest applicable rates; and

  f.  Such other and further relief as may be necessary and appropriate.

            Respectfully submitted,

            By: */s/ Peter S. Mackey* _____
            Peter S. Mackey (MAC012)
            **BURNS, CUNNINGHAM & MACKEY, PC**
            P.O. Box 1583
            Mobile, Alabama 36633
            251-432-0612 – Telephone
            251-432-0625 – Facsimile
            psmackey@bcmlawyers.com

            Michael A. Josephson*
            TX Bar No. 24014780
            Andrew W. Dunlap*
            TX Bar No. 24078444
            **JOSEPHSON DUNLAP LLP**
            11 Greenway Plaza, Suite 3050
            Houston, Texas 77046
            713-352-1100 – Telephone
            713-352-3300 – Facsimile
            mjosephson@mybackwages.com
            adunlap@mybackwages.com

            Richard J. (Rex) Burch*
            TX Bar No. 24001807
            **BRUCKNER BURCH PLLC**
            11 Greenway Plaza, Suite 3025
            Houston, Texas 77046
            713-877-8788 – Telephone
            713-877-8065 – Facsimile
            rburch@brucknerburch.com

            *\*Pro hac vice applications forthcoming*

            **ATTORNEYS FOR PLAINTIFF**
            **& PUTATIVE CLASS MEMBERS**

# EXHIBIT 1

## CONFIDENTIAL FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT

Print Name: **Sonya D. Gladney Pleasants**

1. I hereby consent to make a claim against **Pilot Catastrophe** to pursue my claims of unpaid overtime during the time that I worked with the company.

2. I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of an agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3. I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against **Pilot Catastrophe**.

4. I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: *Sonya D. Gladney Pleasants* (Mar 3, 2023 11:01 CST)

Date Signed: **Mar 3, 2023**