# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| SONYA GLADNEY PLEASANTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CIVIL ACTION NO. 23-00132-KD-MU |
| | ) |
| PILOT CATASTROPHE SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |

## ORDER

This action is before the Court on Defendant Pilot Catastrophe Services, Inc.'s Amended Motion to Seal (doc. 37) and the Amended Joint Motion to Approve Settlement and Supporting Brief (doc. 38, under seal) ("Amended Joint Motion") and the Confidential Settlement Agreement and General Release of Claims (under seal) ("Amended Settlement Agreement") (doc. 38-1). Upon consideration, and for the reasons set forth herein, the Amended Motion to Seal is GRANTED,[1] the Amended Joint Motion to Approve Settlement is GRANTED in part, and the Confidential Settlement Agreement and General Release of Claims is APPROVED with the modifications set forth herein. (See page 10).

I. Background

Plaintiff Sonya Gladney Pleasants brought this collective action complaint pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, against Pilot (doc. 1). Pleasants was employed by Pilot as an insurance claim adjuster since 2018. Her primary job duties included inspecting property damage caused by catastrophic events, assessing the costs of damage, and providing insurance carriers with damage estimates. Pleasants alleges that Pilot misclassified her

---

[1] The initial Motion to Seal (doc. 33) is MOOT.

and other "day rate" adjusters as salaried employees exempt from overtime requirements and violated the FLSA by failing to pay overtime compensation.

Pilot filed a motion to compel arbitration pursuant to the arbitration provisions in Pleasants' two employment agreements and moved to dismiss all class action claims and consolidated and/or collective action claims (doc. 25). Pleasants notified the Court that she did not oppose the motion (doc. 29). However, she incorrectly stated that Pilot "moved this court to arbitrate Plaintiff's individual *and class action claims* ..." (Id) (emphasis). Instead, Pilot had moved to dismiss the class action claims. Pleasants was ordered to clarify whether she opposed dismissal of her class action claims and consolidated and/or collective actions claims (doc. 30).

In response, the parties filed a Joint Status Report (doc. 31). They reported that Pleasants did not oppose dismissal of the class action claims and consolidated and/or collective actions claims. They also reported that after agreeing to arbitrate, the parties reached a settlement agreement in principle as to Pleasants' claims under the FLSA (Id.). The parties requested sixty (60) days within which to finalize their agreement. The action was stayed (doc. 32).

The parties filed the Settlement Agreement and General Release of Claims (doc. 34). However, the document contained certain disfavored provisions and the parties were given leave to amend (doc. 36). Also, Pilot was given leave to amend its motion to seal (Id.) This action is now before the Court on the Amended Joint Motion and the Amended Settlement Agreement (doc. 38) and Pilot's Amended Motion to Seal (doc. 37).

II. Amended Motion to Seal

Pilot moves the Court to permanently seal the Amended Joint Motion and the Amended Settlement Agreement (doc. 37). As grounds, Pilot points out that the arbitration provisions in the two employment agreements generally require confidentiality and that the parties agreed to confidential arbitration for the FLSA claims. Pilot argues that even though the settlement was

2

reached before arbitration, it "was reached as a result of and in connection with an agreement to confidentially arbitrate" (Id., p. 4-5), and that in this context, the parties' contractual interest in privacy and confidentiality outweighs the public's interest or access to settlement agreements related to confidential arbitration. Pilot also argues that sealing the documents promotes the public policy of encouraging voluntary execution of private arbitration agreements.

Pilot also argues that the presumption that FLSA settlements should be available to the public is outweighed because there is no public interest in assuring fair wages "given the likelihood" Pleasants would receive little to no recovery if this action proceeded to trial. Pilot points to the parties' assertion in the Amended Joint Motion that Pleasants would likely be judicially estopped from bringing this action. Pilot also asserts that the Amended Joint Motion should be sealed because it contains embarrassing information about Pleasants' bankruptcy, with no benefit to the public. Pilot also asserts that neither the public interest nor the purpose of the FLSA would be served by public filing of the Amended Settlement Agreement and the Amended Joint Motion because that would encourage other nuisance lawsuits (Id., p. 2, 6).

In 2003, the district court in <u>Stalnaker v. Novar Corp</u>., explained as follows:

"In most cases when the parties settle, the court does not examine or approve their agreements; the settlements are purely private contracts. However, when, as here, a settlement [must be] approved by a court, the settlement becomes part of the judicial record....

"There is a common-law presumption that judicial records are public documents. <u>Nixon v. Warner Communications, Inc</u>., 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L.Ed.2d 570 (1978); <u>Chicago Tribune Co. v. Bridgestone/Firestone</u>, 263 F.3d 1304, 1311 (11th Cir. 2001).... [T]he presumption is based on the nature of democracy and the 'citizen's desire to keep a watchful eye on the workings of public agencies.' <u>Nixon</u>, 435 U.S. at 598, 98 S.Ct. 1306. A judge is 'the primary representative of the public interest in the judicial process and is duty-bound therefore to review any request to seal' any part of the record. For this reason, a

3

> judge 'may not rubber stamp a stipulation to seal the record.' Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999).
>
> "The strength of the presumption of openness falls along a continuum, with the presumption being stronger for documents that 'directly affect an adjudication' than for documents, such as certain discovery materials, that 'come within a court's purview solely to insure their irrelevance.' United States v. Amodeo, 71 F.3d 1044, 1049 (2nd Cir. 1995); see also Chicago Tribune, 263 F.3d at 1311.
>
> "And the presumption is surely most strong when the 'right' at issue is of a 'private-public character,' as the Supreme Court has described employee rights under the FLSA. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 708, 65 S.Ct. 895, 89 L.Ed. 1296 (1945). This public character is based on 'an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose standards of minimum wages and maximum hours were provided.' Id. at 706–707, 65 S.Ct. 895 (footnotes omitted). Absent some compelling reason, the sealing from public scrutiny of FLSA agreements between employees and employers would thwart the public's independent interest in assuring that employees' wages are fair and thus do not endanger 'the national health and well-being.' Id."

Jun Soo Lee v. Guyoungtech USA, Inc., 247 F. Supp. 3d 1257, 1264–65 (S.D. Ala. 2017) (quoting Stalnaker, 293 F.Supp.2d 1260, 1263–1264 (M.D. Ala. 2003)) (some internal citations omitted).

Previously, the Court explained that the parties did not enter "confidential arbitration" and that the settlement was not reached "as a result of that confidential arbitration" but instead, the "parties settled this action before the Court ruled upon Pilot's motion to compel arbitration" (doc. 36). Also, the Court explained that FLSA settlement agreements "whether obtained through

4

arbitration or by settlement are treated differently because of the private-public nature of the FLSA" (Id.). Thus, the Court gives no weight to the argument that the Amended Settlement Agreement and Amended Joint Motion should be sealed because the parties entered into employment agreements which contained confidential arbitration provisions. See Littleton v. Auto Reflections, Inc., 2018 WL 11454851, at *2 (N.D. Ga. Apr. 10, 2018) ("Finally, the Court agrees that the confidentiality provisions of the arbitration agreement are contrary to the informational purpose of the FLSA." (citing Gamble v. Air Serv. Corp., 2017 WL 1951145, at *3 (N.D. Ga. Mar. 28, 2017)).

However, confidentiality provisions have been approved in FLSA settlements where the provision is bargained for and the plaintiff receives separate consideration. See Smith v. Aramark Corp., 2014 WL 5690488, at *3–4 (M.D. Fla. Nov. 4, 2014); Caamal v. Shelter Mortgage Co., 2013 WL 5421955, at *4 (M.D. Fla. Sept. 26, 2013) (same). Confidentiality provisions have been approved where the plaintiffs requested the inclusion and set forth sufficient legal reasons for confidentiality. Crabtree v. Volkert, Inc., 2013 WL 593500, at *4-5 (S.D. Ala. Feb. 14, 2013). Here, Pleasants separately bargained for and received separate consideration for the confidentiality provision. And importantly, Pleasants jointly moves for the Amended Settlement Agreement and Release to be approved as submitted. Overall, the public interest in assuring that employee wages are fair is "adequately safeguarded by the disclosure in this Order of the monetary terms of the FLSA settlement" and access to the court file. See Crabtree, 2013 WL 593500, at *5. Accordingly, the Motion to Seal the Amended Motion and the Amended Settlement Agreement is GRANTED.

III. Amended Joint Motion to Approve Settlement

A. Analysis

In Lynn's Food Stores, Inc. v. United States *ex rel*. Dep't of Labor, Emp. Standards Admin., Wage & Hour Div., 679 F.2d 1350, 1352-1355 (11th Cir. 1982), the Eleventh Circuit recognized two (2) methods for settlement of claims brought pursuant to the FLSA: "(1) a payment supervised by the Department of Labor under 29 U.S.C. § 216(c) or (2) by a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." Padilla v. Smith, 53 F.4th 1303, 1308 n. 8 (11th Cir. 2022) (quoting Lynn's Food Stores, Inc., 679 F.2d at 1355. The latter applies here.

Moreover, 29 U.S.C. § 216(b) provides that "...[a]ny employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wage, or their unpaid overtime compensation… and in an additional equal amount as liquidated damages." Thus, "in any case where a plaintiff agrees to accept less than his full FLSA wages and liquidated damages, he has compromised his claim within the meaning of Lynn's Food Stores." Vergara v. Delicias Bakery & Restaurant, Inc., 2012 WL 2191299, *1 (M.D. Fla. May 31, 2012). Additionally, 29 U.S.C. § 216(b) also provides that "... The court…shall, in addition to any judgment awarded to the plaintiff…allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

1. Bona Fide Dispute

Pleasants alleges that Pilot was an employer as contemplated under the FLSA. She alleges that Pilot misclassified her as a salaried employee who was exempt from overtime pay requirements. Consequently, she was not paid overtime wages for hours worked in addition to 40

6

hours per week in violation of the 29 U.S.C. § 207 of the FLSA. She now claims damages including her unpaid overtime compensation (doc. 1). Review of the pleadings, the Amended Joint Motion wherein the parties explain their disagreement on legal and factual issues, including whether Pleasants' claims may be judicially estopped should this action proceed to trial or arbitration, whether her allegation of misclassification as a salaried employee may be factually and legally incorrect, and whether her deployments were within the major disaster exemption to the FLSA, and the Amended Settlement Agreement and General Release of Claims confirms that they have a bona fide dispute over FLSA provisions.

  2. <u>Fair and reasonable resolution</u>

  Evaluating the fairness of an FLSA compromise includes an assessment of 1) the existence of fraud or collusion behind the settlement; 2) the complexity, expense, and likely duration of the litigation; 3) the stage of the proceedings and amount of discovery completed; 4) the probability of plaintiff's success on the merits; 5) the range of possible recovery; and 6) the opinions of the counsel. <u>Dees v. Hydradry, Inc</u>., 706 F.Supp.2d 1227, 1241 (M.D. Fla. 2010). Generally, a strong presumption exists in favor of finding a settlement fair and reasonable. <u>Stokes v. Gulf Distributing Co. of Mobile LLC</u>, 2018 WL 1881265, *3 (S.D. Ala. 2018). "Such deference is warranted because 'the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement' and '[i]f the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.'" <u>Stokes</u>, 2018 WL 1881265, *3 (quoting <u>Bonetti v. Embarq Management Co.</u>, 715 F. Supp.2d 1222, 1227 (M.D. Fla. 2009)).

  Here, the parties assert that their Amended Settlement Agreement was the result of good faith, arms-length negotiations – without collusion or fraud - between experienced wage and

7

hour counsel who considered the significant risk of time and expense of trial for Pilot and the significant risk of no recovery for Pleasants, as further addressed in the Amended Joint Motion. The parties agree that the Settlement Agreement is a fair and reasonable compromise of Pleasants' disputed FLSA claim. The parties also agree that Pleasants would face significant challenges to establishing entitlement to liquidated damages (doc 38). Thus, Pleasants has exchanged the risk of recovery for recovery of a sum certain.

The Court has reviewed the Amended Settlement Agreement and finds that most of the disfavored provisions have been removed.[2] In the Amended Joint Motion, the parties state that they "have removed" the extensive Mutual Confidentiality provision (doc. 38, p. 8). (compare doc. 38-1, ¶ 13 with doc. 34-1). The Amended Settlement Agreement is still captioned "Confidential", but Pleasants agrees to be paid separate "consideration for her agreement to maintain the confidentiality of this Release" (doc. 38-1, ¶ 3).

The Covenant Not to Sue has been narrowed, in part (doc. 38-1, ¶).   However, the Covenant still includes the phrase:

> nor shall any other court actions, suits, appeals or other legal proceedings of any type be pursued or filed that are connected in any fashion to the employment of Claimant with the Company or to Claimant's separation from that employment, or for any personal injuries sustained in the course of such employment, or by virtue of or related to any other facts, acts, or events occurring in whole or in part on or

---

[2] The pervasive general release has been revised and now is limited to "any and all claims, demands, penalties, causes of action, complaints and charges that are based on or reasonably related to the claims alleged in this Action, including misclassification claims and claims for unpaid wages pursuant to the Fair Labor Standard Act and/or any other similar, state, federal, state (*sic*), or local statute, regulation, or ordinance occurring prior to the effective date of this Settlement Agreement." (doc. 38-1, ¶ 4). And while "Released Parties" is still broadly defined, the parties released is likewise limited (Id.). The provision allowing the parties to modify the Settlement Agreement has been modified to provide for court approval of any modification (Id., ¶ 13). The provision captioned "No Obligation to Rehire" has been removed.

before the Effective Date of this Agreement, as defined in Paragraph 18.

(Doc. 38-1, ¶ 5).

As previously stated, (doc. 36, p. 6), this type of broad-sweeping covenant not to sue, which incorporates claims or causes of action unrelated to the FLSA claims, is disfavored. Avila v. Hendrick Roofing, Inc., 2023 WL 3587736, at *2 (M.D. Fla. May 5, 2023), report and recommendation adopted, 2023 WL 3584073 (M.D. Fla. May 22, 2023) ("General releases and covenants not to sue in FLSA cases require additional judicial scrutiny to ensure that the releases are not a pervasive release 'in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee.'") (quoting Moreno v. Regions Bank, 729 F. Supp. 2d 1346, 1351 (M.D. Fla. 2010)).

The Court previously identified two indemnity provisions which undermined the reasonableness of the original Settlement Agreement (doc. 36, p. 9). The parties state in the Amended Joint Motion that they have "removed the tax indemnification clause" (doc. 38, p. 8). The indemnity provision in ¶ 9, "Taxability", has been removed. However, the indemnity provision in ¶ 3, which also relates to taxes, remains in the Amended Settlement Agreement. Specifically, "and shall indemnify the Company and any affiliated entities and hold them harmless for any such additional taxes, penalties, interest, or other amounts due" (doc. 38-1, ¶ 3) Since the movants specifically state that they removed the disfavored tax indemnification provision and do not argue that the Amended Settlement Agreement should contain the indemnity provision in ¶ 3, the Court interprets the inclusion of an indemnity provision in ¶ 3, as a drafting error.

The Amended Settlement Agreement contains a severance provision (doc. 38-1, ¶ 12).

Thus, the Court will invoke that provision and sever the disfavored phrase from the Covenant Not to Sue as described above and sever the phrase – "and shall indemnify the Company and any affiliated entities and hold them harmless for any such additional taxes, penalties, interest, or other amounts due" - from ¶ 3.

In their Amended Joint Motion, the parties state that

> … Defendant has agreed to pay a Gross Settlement Amount of $6,000.00 (inclusive of amounts paid to resolve the wage claims, attorneys' fees, and costs) to resolve Plaintiff's claims. [] Insofar as the result obtained, while the method of calculation and thereby the total amount of back wages owed is an item of dispute between the Parties, in assessing Plaintiff's pay records during the two-year lookback period, Plaintiff calculated total back wages of approximately $6,600.00. [] Here, the Gross Settlement Amount obtained (inclusive of amounts paid to resolve the wage claims, attorneys' fees, and costs) is approximately 90% of the maximum potential (and disputed) back wages Plaintiff alleged that Defendant owed within the two-year limitations period (not taking into account the significant risks identified above, which may have entitled Plaintiff to significantly less or eve nothing). [].

(Doc. 38, p. 6-7).

The parties state that "[t]his settlement provides Plaintiff a certain, substantial, and immediate payment and averts months (and perhaps years) of continued time-consuming and expensive litigation/arbitration of her claims, with no assurance of success. [] In exchange, Plaintiff agrees to fully, finally, and knowingly release her claims against Defendant, which likewise spares Defendant months (and perhaps years) of continued time-consuming and expensive litigation defending against Plaintiff's claims." (Id., p. 7).

In the Amended Settlement Agreement, the parties break down the $6,000.00 gross settlement amount as follows:

> (a) In consideration for the covenants, releases, and compromises of Claimant as set forth in this Agreement, within fourteen (14) days after the Effective Date, the Company agrees to pay the total sum of $6,000 in three

> (3) checks delivered to Josephson Dunlap, LLP in the following amount(s):
>
> Claimant's net recovery in the amount of $2,848.00 to be paid as consideration for her agreement to maintain the confidentiality of this Release, the complete Release contained herein, and the dismissal of the Action as described in Paragraph 2(b). This amount is to be paid in two separate checks to Claimant, as follows:
>
> i. One half ($1,424.00) as wage payment, less applicable withholdings. This payment will be reported to taxing authorities as required by law, and Claimant will receive an IRS Form W-2 reflecting this amount. Claimant agrees to provide an executed IRS Form W-4 as a condition for receipt of this check.
>
> ii. One half ($1,424.00) as non-wage payment, for which the Company will issue a 1099 form to Claimant. This payment will be reported to taxing authorities as required by law, and Claimant will receive an IRS Form 1099 reflecting this amount.

(Doc. 38-1, p. 3). The remainder of the settlement amount - $3,152.00 – will be paid to Pleasants' counsel for attorney fees and costs. Thus, the actual "total sum" to Pleasants is not $6,000.00 but instead $2,848.00.

Without doubt, Pleasants has compromised her FLSA claim from an estimated $6,600.00 in unpaid wages plus the potential for an additional $6,600.00 in liquidated damages, or $13,200.00.[3] However, in view of Pleasants' significant risk of little to no recovery should this action proceed to trial or arbitration, the Court finds that the settlement is a fair and reasonable resolution of her FLSA claims and approves the Amended Settlement Agreement with the severance of the phrases identified herein.

---

[3] "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).

B. <u>Attorneys' fees and costs</u>

Previously, the Court indicated that the award of attorneys' fees and costs from the gross settlement amount appeared to have adversely affected Pleasants' settlement and reserved a decision until review of the Amended Joint Motion and Amended Settlement Agreement (doc. 36, p. 12).   Now, Pleasants seeks attorney fees in the amount of $2,400.00 and reimbursement for cost in the amount of $752.00. The parties agreed to these amounts and assert that the attorney fees are reasonable, that they were separately negotiated and agreed upon, and do not adversely affect Pleasants' recovery (doc. 38, p. 8).

In support of the parties' agreement, Pleasants' counsel calculates the lodestar – the starting point for a determination of a reasonable attorneys' fee – as 68 hours of attorney time multiplied by varying hourly rates (Id., p 10, n. 3) for a total of approximately $39,500.00, and then exercises billing discretion to exclude paralegal and legal assistant work and 40 hours of attorney work, which reduced the attorney hours to 28 and yielded a lodestar in excess of $15,000. The parties also report that Pleasants' counsel excluded all hours of work performed after the original Settlement Agreement was submitted. The parties assert that in view of these calculations and reductions, the degree of success in the face of "obstacles" to full recovery, and counsel's fronting of costs without an obligation to repay if unsuccessful, the agreed upon and requested amount of $2,400.00 for attorneys' fees is fair and reasonable.

The FLSA expressly provides for recovering a reasonable attorney's fees. 29 U.S.C. § 216(b) ("The court in [an action under the FLSA] shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Notably, the "FLSA requires judicial review ... to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee

recovers under a settlement agreement." Silva v. Miller, 307 Fed. Appx. 349, 352 (11th Cir. 2009). Thus, the courts consider whether the fees were negotiated separately and apart from a plaintiff's settlement of the FLSA claims. Wing v. Plann B Corp., 2012 WL 4746258 at *4 (M.D. Fla. 2012) (where there is a reasonable basis for compromise and "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees ... there is no reason to believe that Plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to Plaintiff's counsel"). Here, the parties present a reasonable basis for compromise of the FLSA claim. Specifically, Pleasants' significant risk of little to no recovery. And the parties verify that the attorney fees were negotiated separately from the FLSA claim. Thus, there does not appear to be an adverse effect upon Pleasants' recovery.

A reasonable attorney's fee is typically calculated by determining the lodestar: the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate. Norman v. Hous. Auth. of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). However, the Court "may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment." Id. at 1303 (quotation omitted).   In this circumstance, where counsel performed the lodestar analysis but agreed to accept a significantly lesser amount as an attorney fee, the Court need not engage in a lodestar re-calculation. Instead, the Court finds that in its independent judgment the amount requested, $2,400.00, is reasonable. Therefore, Pleasants is awarded a reasonable attorney fee in the amount of $2,400.00.

As to costs, the Court may award such costs as found in 28 U.S.C. §1920. Filing fees are recoverable. Id. at § 1920(1). Thus, costs of $402.00 are awarded (doc. 38-3, p. 2)

Cost of copies are recoverable "where the copies are necessarily obtained for use in the case." Id. at § 1920(4). Here, the parties agree that "all expenses were reasonable and necessary for prosecution of this litigation" (doc. 38, p. 12). Thus, costs of $4.40 are awarded (doc. 38-3, p. 3).

Pleasants seeks recovery of costs in the amount of $100.00 for a private process server to serve Pilot. The Eleventh Circuit has held that the district courts may tax the fees of a private process server as costs, but only where the rates do not exceed the cost of service by the U.S. Marshal. U.S. E.E.O.C. v. W & O, Inc. 213 F. 3d 600, 623-624 (11th Cir. 2000) (citing 28 U.S.C. § 1920(1)). The fee for process served or executed by the U.S. Marshals Service is $65.00 per hour. 28 C.F.R. § 0.114(a)(3). Pleasants did not provide any information as to the amount of time expended to serve Pilot. Thus, costs of $65.00 are awarded.

Pleasants also seeks costs for pro hac vice fees in the total amount of $225.00 for counsel to appear in the Southern District of Alabama. In this circuit, pro hac vice fees are not taxable as costs. See Nail v. Shipp, 2020 WL 1670459, at *11 (S.D. Ala. Apr. 3, 2020) (collecting cases and citing Eagle Ins. Co. v. Johnson, 982 F. Supp. 1456, 1459-1460 (M.D. Ala. 1997), aff'd 162 F.3d 98 (11th Cir. 1998)); Marjam Supply Company of Florida, LLC. V. Pliteq, Inc., 2021 WL 1200422 (S.D. Fla. Mar. 5, 2021) (same); Bostic v. Bodie, No. 22-60661-CIV, 2023 WL 8701841, at *1 (S.D. Fla. Dec. 15, 2023) ("this Court considers pro hac vice fees to be 'an expense of counsel, not the client, and are not recoverable as a fee of the clerk.'") (quoting Exhibit Icons, LLC v. XP Companies, LLC, 2009 WL 3877667 at *1 (S.D. Fla. Nov. 18, 2009)). Thus, costs for pro hac vice fees are not awarded.

Pleasants also seeks $20.00 as costs which appear to have been incurred in the Southern District of Texas (doc 38-3, p. 4). The Court is unable to ascertain the purpose for this cost. Thus, this cost is not awarded.

Accordingly, in recapitulation, Pleasants is awarded attorney fees in the amount of $2,400.00 and costs in the amount of $471.40 for a total of $2,871.40.

III. Conclusion

For the reasons set forth herein, the Amended Motion to Seal is GRANTED, the Amended Joint Motion to Approve Settlement is GRANTED in part, and the Confidential Settlement Agreement and General Release of Claims is APPROVED, with the modifications set forth herein (see page 10), as fair and reasonable.

A stipulated final judgment shall be entered separately.

DONE and ORDERED this the 30th day of April 2024.

s/ Kristi K. DuBose  
KRISTI K. DuBOSE  
UNITED STATES DISTRICT JUDGE